JESSE W. TODD, APPELLEE, V. CITY OF CRETE, APPELLANT.[*]

FILED JULY 12, 1907. No. 14,898.

1. Cities: POWERS. A city of the second class of less than 5,000 inhabitants is authorized by the law of this state to operate an electric lighting plant for municipal and commercial purposes.

2. ———: LIABILITY. Where such city is engaged in the operation of an electric lighting plant for commercial purposes, and one of its wires is negligently left in a position to cause injury to one who is without fault on his part, the fact that such wire was not in use at the time the accident occurred constitutes no defense to an action for damages.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. Affirmed.

M. H. Fleming and Tibbets & Anderson, for appellant.

Flansburg & Williams and Hastings & Ireland, contra.

[*]Rehearing allowed. See opinion, p. 677, post.

JACKSON, C.

The plaintiff had judgment, from which the defendant appeals. The defendant is a city of the second class with less than 5,000 inhabitants, and owns and operates an electric lighting plant within its boundaries. The plaintiff was a railway brakeman in the employ of the Chicago, Burlington & Quincy Railway Company, which operates a line of railway through the limits of the defendant city. The plaintiff's cause of action is based upon the complaint that the defendant, in the operation of its lighting plant, had stretched wires over and across the right of way of the railway company in so negligent and careless a manner that they were not sufficiently high to clear the body of a man standing on top of a freight car in the usual course of the operation of the trains of the railway company, and that the plaintiff, while engaged in his duties as a brakeman, was required and compelled to serve on top of such cars while the trains were switching in the transaction of the business of the company at the station in the defendant city, and that, while so employed, without knowing the dangerous situation of the wires, and in the darkness of the night, was caught by one of the wires of the defendant's lighting system, thrown to the ground and seriously injured. The answer admits that the plaintiff fell from the train and sustained an injury, denies the other allegations of the petition, charges the contributory negligence of the plaintiff and negligence on the part of the railway company. The reply is a general denial.

The first assignment of error discussed by appellant is that the verdict of the jury is not sustained by the evidence. The train on which the plaintiff was employed was in charge of conductor Hart. The plaintiff and Garner were his brakemen. The plaintiff was on top of the car immediately in front of the car upon which Garner was located. They were switching in the yards in the night season, the train moving east, when Garner heard the plaintiff cry out, saw his lantern drop, and the plaintiff

himself fall from the train, apparently between two cars. He notified the conductor, who was near at hand. The conductor signaled the train to stop, and he, together with Garner, went to where the plaintiff was found lying on the ground in an unconscious condition. They placed him on a grain door taken from one of the cars, carried him to the temporary depot then being used by the railway company, and called physicians. Acting on the advice of the physicians, they put him in the caboose and took him to Lincoln, and immediately came back to Crete for the train and to ascertain, if possible, how the accident occurred. The cars upon which the plaintiff and Garner had been employed had been left standing on the switch where they were when the accident happened, the engine was coupled onto these cars, and the train backed west until they came to a point immediately under where the electric light wires of the defendant passed over the track, when it was discovered that one of the wires had sagged and was at a height above the ground, as shown by actual measurement, where it would have caught the plaintiff under the chin had he been standing erect on top of the car. The testimony of the plaintiff's witnesses, if true, was sufficient to show that no other obstruction existed along this side-track which could have thrown the plaintiff from the train. The plaintiff himself was rendered unconscious by the injury, and remained in that condition for many days, and was unable to give any explanation of the accident. His injuries consisted in bruises about the head and other parts of the body, which the jury might have found to have been occasioned by his fall. The physicians who took charge of him upon his arrival at Lincoln, and other witnesses on behalf of the plaintiff, testify to an injury some four or five inches in length under the chin. The physicians describe this injury as a burn, saying that it was superficial, that is, not burned deeply, but enough so that it admitted of bleeding. The wires used by the defendant in its lighting plant were

46

copper and insulated. It is the theory of the plaintiff that this burn was caused from coming in contact with the wire. Both Hart and Garner testify to having found the place where the plaintiff fell and identified it by marks in the dust and dirt. The conductor described it as the exact place where he lay. Garner testified that this place was about 15 to 25 feet east of the wire. It is the theory of the defendant that the plaintiff was thrown from the train by the limb of a box elder tree at a point 200 feet or more east of the wire. The testimony of the defendant's witness, if true, proves that a limb from that tree extended out over the track sufficiently low to have caused the accident, and tends to prove that the body of the plaintiff was found at a point east of this tree. With respect to these facts there is a direct conflict in the evidence. The weight to be given to the testimony of the witnesses was, however, for the consideration of the jury, and from a careful reading of all the evidence we are convinced that there was sufficient evidence to justify the submission of the case to the jury, and we do not feel at liberty to disturb their verdict.

On the cross-examination of the witness Garner, he testified that one of the physicians called to see the plaintiff at Crete asked him how the accident occurred, and he answered that he told him that he thought the limbs of a tree knocked Todd off and hurt him; that he did not know at that time where the wires were with reference to the tree. The defendant offered to prove by this witness that at the time the accident occurred he knew that they had not passed the tree. Objections to the offer were sustained. The conversation with the doctor was immediately after the injury and before the witness had made any investigation with reference to surrounding objects. His testimony as to the point where the plaintiff fell was based entirely upon the condition of the ground ascertained from a subsequent examination of the premises. Until that examination was made, he had no knowledge of the existence or location of the wires, and, had he tes-

tified as the defendant's offer presumed that he would, the testimony would in nowise have conflicted with his previous statements. There was no error, therefore, in sustaining the objection.

The plaintiff himself testified that his average earnings at the time of the accident were $75 a month. On cross-examination the defendant sought to prove that out of the plaintiff's earnings he contributed to the Burlington Voluntary Relief Association. He was permitted to answer that he did, but objections to interrogatories tending to draw out from the witness how much he contributed were sustained. We are unable to understand how the rights of the defendant were affected in anywise by this ruling of the court. There is nothing in the record tending to show the character of this association or the purpose of making such payments, except as the witness stated that they were for an equivalent. He stated that he had not been paid in full by this department for loss of time and service occasioned by the accident, that he had made no settlement with the railway company in any way. He was asked: "Did you not give the Burlington Voluntary Relief Department a receipt in which it was stated that, in consideration of their paying you money, you waived all damages against the Burlington road?" An objection to this question was sustained, and the ruling is assigned as error. The question was not followed by an offer of proof, and in any event was entirely immaterial. It seems to be the theory of the defendant that the railway company was a joint tort-feasor with the defendant, and that a release from the railway company would discharge the liability of the defendant. A sufficient answer to this claim is that it would be an affirmative defense and is not pleaded.

The defendant also offered to prove that at the time these wires were strung across the Burlington tracks a station agent in the employ of the railway company directed the height at which they should be erected. This evidence was excluded by the trial court. If admitted,

it would have been immaterial. It is shown without dispute that shortly before the accident the Burlington station at Crete was destroyed by fire and the wires in question were loosened. Immediately after the fire an electrician in the employ of the defendant undertook to make the wires secure at the exact place where the accident occurred, so that the question was not as to how the wires were originally strung and under whose direction, but in what condition they were left by the employees of the defendant before the accident occurred.

It is urged that the city is not liable because at the time the accident occurred, and since the destruction of the Burlington depot, the wires were not in use, their commercial use having been abandoned. It is conceded that, had the accident occurred while the wires were in actual use, the defendant would have been liable for the negligent acts and omissions of its servants. We cannot concur in this contention. The wires were originally placed there for commercial purposes. After the accident they were removed by the city authorities and stored with other property belonging to the defendant. The city had attempted to make the wires secure immediately after the fire. The agent of the defendant who performed that service was acting in the line of his duty. Cities of the class of the defendant are expressly authorized by statute to erect and maintain electric lighting plants, and a municipality that lawfully engages in commercial enterprises is liable to the public the same as an individual.

And, finally, it is urged that the court erred in overruling the motion for a new trial. One of the grounds set out in the motion for a new trial was newly discovered evidence. Affidavits were filed in support of that branch of the motion. We have examined the affidavits, and, had the persons who subscribed to these affidavits testified as disclosed by the affidavits that they would, their evidence would have been cumulative only, and the trial court was chargeable with no abuse of discretion in overruling the motion for that reason.

We find no reversible error, and recommend that the judgment be affirmed.

AMES and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed February 20, 1908. *Former judgment of affirmance adhered to:*

1. **Trial: EXAMINATION OF WITNESS.** It is a valid objection to a question upon cross-examination that it is unnecessarily complex in form and involved in meaning, and it is not error to sustain an objection to such a question upon that ground, especially where the party makes no offer to put his interrogatory in a simpler and clearer form.

2. **New Trial: SHOWING.** An affidavit for a new trial on the ground of newly discovered evidence must state facts and circumstances from which the court may determine that the party applying exercised diligence in endeavoring to procure such evidence before the trial.

CALKINS, C.

The facts in this case are set forth in the former opinion, *ante,* p. 671. The correctness of the proposition stated in the first and second points of the syllabus was not challenged upon the reargument; but it was insisted that the court did not sufficiently consider the error alleged in sustaining objections to a question asked by the defendant in the cross-examination of the witness Garner, nor the alleged error in the overruling of the motion for a new trial on the ground of newly discovered evidence.

1. The witness Garner had testified to the examination made by him and his associates after their return from taking the plaintiff to Lincoln, and to the discovery that the wire in question was low enough to have caused the accident, and that there was no other obstruction which could have caused the same. Upon the cross-examination

he admitted that he told Dr. Foss before making this in-
vestigation that he thought the limbs of the tree knocked
the plaintiff off the cars. The cross-examination was con-
tinued by the defendant as follows: "Q. Now, Mr. Wit-
ness, you knew that this tree was there, did you? A. Yes,
sir. Q. And you knew that before you told Dr. Foss of it?
A. Yes, sir. Q. And you knew where the tree was, didn't
you? A. Well, I knew about where it was; yes, sir, right
there beside the track. Q. And you knew that the point
where you saw Mr. Todd fall off and where this wire was
over west of this tree, didn't you know it at that time? A.
That where Todd fell was over west of the tree? Q. Yes,
sir; that is, where you claimed he fell off? A. Well, sir,
I can't say as to how far it was from the tree. Q. Didn't
you know at that time it was some ways west? Didn't
you know that the wire was some distance west of that
tree? A. Well, I can't say that I did. Q. Well, did you
know at the time that you were talking with Doctor Foss
that you hadn't passed that tree, if what you have stated
heretofore was true, that Todd fell off west of it, at the
time the accident occurred?" To this question the plain-
tiff objected as not a cross-examination, and because the
question was not intelligible, and assumed certain facts not
shown to have been testified to. This objection was sus-
tained. The question was complex in form and involved
in meaning, and such as might be uncomprehended or mis-
understood by the witness, and we think the court prop-
erly sustained the objection on that ground. The defend-
ant did not make any offer to simplify the question, end-
ing his cross-examination with the sustaining of this ob-
jection. We still agree with the statement in the former
opinion that, if the witness had made the admission sought
to be elicited by the question, it would not have conflicted
with his former statements; but, whether this be so or not,
the question in the form in which it was put was objection-
able for the reasons we have stated, and the district court
was right in sustaining the objection thereto.

2. To entitle a party to a new trial on the ground of

newly discovered evidence, it is necessary for him to show that he could not with reasonable diligence have ascertained its existence and produced this evidence at the trial; and this must be established, not by the conclusions of the witness supporting the application, but by facts and circumstances from which the judge may determine whether the party did in truth use such diligence. The allegations in the affidavit made by the attorney for the defendant to establish such diligence are that he made inquiry of all whom "affiant had reason to suspect knew anything of the fact"; and in making such inquiries for facts "affiant talked with every one who he had reason to suppose would be informed as to such facts, and all that affiant had any reason to believe would have been in the vicinity of the accident at the time it occurred, and all that affiant had any reason to suppose had any business near the accident at the time it occurred." This affidavit made the witness the sole judge of where and of whom his inquiries should be made. It stated no facts from which the court could say whether the judgment of the witness was properly exercised, and in this we think it was fatally defective. *Goracke v. Hintz,* 13 Neb. 390, and cases there cited; *Richter v. Meyers,* 5 Ind. App. 33; *Smith v. Williams,* 11 Kan. 104. For this reason alone the application should be denied, and it is not necessary for us to reexamine the question whether the newly discovered evidence was cumulative or not.

We therefore recommend that the former judgment of this court be adhered to.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of the court is adhered to.

AFFIRMED.