# DELIA KEEVER v. CITY OF MANKATO.

## KATE FLANAGAN v. SAME.[1]

December 23, 1910.

Nos. 16,282, 16,283—(5, 6[2]).

**Pollution of water supply — liability of defendant city.**

A complaint charged that defendant city negligently allowed the supply in its waterworks system to become polluted with poisonous substances, and large quantities of filth and sewage to escape into and saturate its water supply, by reason whereof plaintiffs' intestates contracted typhoid fever and died as a consequence. On demurrer it is *held:*

1. The municipality was liable for its negligence in its private or corporate capacity, and was not exempt because it was carrying out a governmental function.

2. Under section 4503, R. L. 1905, an administrator of a person whose death was due to the wrongful act of a municipality may maintain an action against it for damages consequent thereon. Maylone v. City of St. Paul, 40 Minn. 406, and Orth v. Village of Belgrade, 87 Minn. 237, followed.

Action by the administratrix of the estate of Lewis Eugene Keever, deceased, in the district court of Blue Earth county, to recover $5,000 for the death of her intestate, caused by defendant's alleged negligence in permitting its water supply to become polluted. Another action was brought by the administratrix of the estate of F. R. Flanagan, deceased, to recover the same amount for the death of her intestate, caused by the same negligence. The substance of the complaints is stated in the opinion. Defendant demurred to the complaints, and from orders sustaining the demurrers, Pfau, J., plaintiffs appealed. Reversed.

[1]Reported in 129 N. W. 158, 775.          [2]April, 1910, term calendar.

[Note] Distinction between public and private functions of municipal corporations in respect to liability for negligence, see note in 19 L.R.A. 452; and note in 1 L.R.A.(N.S.) 665.

Liability of municipality for death or sickness caused by sewage or drainage, see note in 22 L.R.A.(N.S.) 940.

*Chris Carlson* and *Dunn & Carlson,* for appellants.

There is a distinction between the exercise by a municipal corporation of a public or governmental function and a private or corporate function. In the former no liability attaches for negligence, in the latter it does. Board v. Common Council, 28 Mich. 229; Bailey v. Mayor, 3 Hill, 531.

The text writers are all agreed that the classification of private and public functions is the law of the land and in general the furnishing of water for domestic use is a private function, with the attendant liabilities, the same as attaches to an individual engaged in the same business. 1 Dillon, Municipal Corp. (3d Ed.) §§ 66, 67; 5 Thompson, Negligence, § 5829. (Liable for negligence in maintaining water works.) 1 Smith, Municipal Corporations, § 802. (Liable for negligence in furnishing wells and water.) 3 Abbott, Municipal Corporations, § 892 (Same doctrine as to water works). Tiedeman, Municipal Corporations, § 327b (Same doctrine as to water works). 1 Jaggard, Torts, p. 179; 28 Cyc. § 1289 (Public wells; liable for negligence in maintaining). Bailey v. Mayor, supra. Wiltse v. City of Red Wing, 99 Minn. 255; Western v. City, 31 Pa. St. 185; Aldrich v. Tripp, 11 R. I. 141; Esberg v. City, 34 Ore. 282; Wagner v. City, 146 Ill. 139; Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 282; Judson v. Borough, 80 Conn. 384; Brown v. Salt Lake City, 33 Utah, 222; City v. Selz, 202 Ill. 545; Ottersbach v. Philadelphia, 161 Pa. St. 111; Todd v. City, 79 Neb. 671; Davoust v. Alameda, 149 Cal. 69.

The distinction is no more clearly drawn than in the state of Massachusetts. In that state the liability for negligence in maintenance of streets and highways is entirely statutory, and therefore governed entirely by the language of the several statutes. Hill v. City, 122 Mass. 344; Oliver v. City, 102 Mass. 489, 497; Merrimack v. City, 152 Mass. 556; Lynch v. Springfield, 174 Mass. 430; Little v. City, 177 Mass. 114; Collins v. Greenfield, 172 Mass. 78, 80. The law of Minnesota is in harmony with this principle. Snider v. City of St. Paul, 51 Minn. 466, 470; Reed v. City of Anoka, 85 Minn. 294; Powell v. City of Duluth, 91 Minn. 53; Wiltse v. City

of Red Wing, supra; Gordon & Ferguson v. Doran, 100 Minn. 343; City of Winona v. Botzet, 169 Fed. 321.

The city of Mankato was exercising a private function in the operation of its waterworks plant and was liable for negligence. City Charter, c. 9, § 1; c. 6, §§ 15, 16.

An action for death by wrongful act is maintainable against a municipality. R. L. 1905, § 4503; Maylone v. City of St. Paul, 40 Minn. 406; Orth v. Village of Belgrade, 87 Minn. 237.

*John W. Schmitt,* City Attorney, *Harrison L. Schmitt, Samuel B. Wilson* and *Lorin Cray,* for respondent.

It is well settled in the United States, and in this state, that cities as well as counties, townships, etc., are not liable in damages for injuries resulting from the negligence of their officers or agents while engaged in the performance or carrying out of so-called governmental functions, in the absence of statutory provisions making them liable.

To this general rule there is in this state, and some of the other western states, the well-known exception, that cities are held liable for damages arising from their negligence in failing to keep in repair and in a safe condition their public streets, without any statutory provision making them liable therefor. Schigley v. City of Waseca, 106 Minn. 74; Davoust v. Alameda, 149 Cal. 69; City v. Long, 17 Grat. 375; Claussen v. City of Luverne, 103 Minn. 491; Gullikson v. McDonald, 62 Minn. 278; Lane v. Minnesota State Agricultural Society, 62 Minn. 175; Snider v. City of St. Paul, 51 Minn. 466; Hill v. City, 122 Mass. 344.

The city of Mankato in its ownership and operation of its waterworks system is exercising and performing governmental functions. Smith, Modern Law of Municipal Corporations, §§ 269, 270, 271, 273, 779, 780; 1 Abbott, Municipal Corporations, § 146; 3 Abbott, Municipal Corporations, § 2226; Elliott, Municipal Corporations, §§ 146, 306, 321; City v. Braden, 130 Ind. 149; Smith v. Nashville, 88 Tenn. 464; Jacksonville v. Jacksonville (Fla.) 30 L.R.A. 540; Miller v. City of Minneapolis, 75 Minn. 131; Claussen v. City of Luverne, supra; City of East Grand Forks v. Luck, 97 Minn. 373;

Springfield v. Village, 148 N. Y. 46; Grube v. City of St. Paul, 34 Minn. 402.

In its ownership and operation of its waterworks system, the city of Mankato is exercising its police power, for and in behalf of the health, safety and general welfare of its inhabitants and the public generally. 2 Abbott, Municipal Corporations, 1142, 1143, also note to section 888; City v. Selz, 202 Ill. 545; Tollefson v. City, 228 Ill. 134; Sp. Laws 1891, c. 47, subc. 9, § 10; Sp. Laws 1891, c. 47, subc. 4, § 29; Evans v. City, 231 Ill. 223; Prime v. City, 192 N. Y. 105; Bryant v. City of St. Paul, 33 Minn. 289; Claussen v. City of Luverne, supra; 1 Farnham, Water & Water Rights, § 146; City v. Braden, supra; Smith v. Nashville, supra; Jacksonville v. Jacksonville, supra; Elliott, Municipal Corporations, §§ 146, 306, 321; Miller v. City of Minneapolis, 75 Minn. 131; Springfield v. Village, 148 N. Y. 46; Green v. Ashland, 101 Wis. 258.

It would not be sound policy to open the door, and permit actions for injuries like these to be maintained, for the reason that the result would be that the city of Mankato, as well as any other city, or cities, liable at any time to have the same misfortune, would be bankrupted thereby. This would result in the destruction of a branch of the government. 23 Am. & Eng. Enc. (2d Ed.) 455; Mechem, Public Officers, 348; Orme v. Kingsley, 73 Minn. 143; McNamara v. Gargett, 68 Mich. 454; Eastman v. Meredith, 36 N. H. 284; Conway v. City, 61 Tex. 10; Stewart v. City, 9 La. An. 461; Dargan v. Mayor, 31 Ala. 469; City v. Long, 17 Grat. 375.

See also cases in this state holding no liability for damages resulting to premises in a city by reason of change of streets prior to amendment of constitution. Russell v. Men of Devon, 2 T. R. 667; Frazer v. City, 186 Ill. 480; City v. Allen (Tex. Civ. App.) 40 S. W. 324; Goodyear v. Brown, 155 Pa. St. 514; 2 Abbott, Municipal Corporations, 1231; Springfield v. Village, 148 N. Y. 46; Hughes v. City, 161 N. Y. 96; Williams v. Town, 130 N. C. 93; Kavanagh v. Barber, 131 N. Y. 211; Thompson, Corporations, § 6276; City v. East, 117 Ind. 126; Wharton, Negligence, § 257; 1 Abbott, Municipal Corporations, 223; 3 Abbott, Municipal Corporations, § 967, p. 2245; Buckingham v. Plymouth, 142 Pa. St. 221.

If it is the law in this state that a municipal corporation can be held liable for injuries resulting from the negligence of its officers, in connection with its ownership and operation of a municipal waterworks, still this complaint does not state a cause of action. Such cause of action died with the plaintiff's decedent. Scheffler v. Minneapolis & St. L. Ry. Co., 32 Minn. 125; R. L. 1905, § 4503; G. S. 1878, c. 77, § 1; Laws 1889, c. 109; Const. Minn. art. 4, §§ 33, 36; Const. Minn. art. 1, § 1; G. S. 1866, c. 34; R. L. 1905, § 2839; Sutherland, Statutory Construction, § 229; R. L. 1905, § 5513; Hutchins v. St. Paul, M. & M. Ry. Co., 44 Minn. 5.

The statute is in derogation of the common law and must be strictly construed. Sutherland, Statutory Construction, §§ 290, 390, 400.

Actions founded on such statutes must strictly conform to them. Such statutes cannot be extended by implication. The relief or remedy provided is not extended to any other person than those mentioned in the statutes. 2 Sutherland, Statutory Construction, §§ 371, 378, 398. "Public rights will not be treated as relinquished or conveyed away by inference or legal construction. Statutes permitting the state to be sued are in derogation of its sovereignty and will be strictly construed. A statute conferring privileges upon individuals should not be so construed as to work a public mischief." 2 Sutherland, Statutory Construction, § 558; Wallace v. Lawyer, 54 Ind. 501; Linehan v. City, 109 Mass. 212; Switzer v. City, 40 Kan. 250; State v. District, 16 R. I. 424; George W. Emory & Co. v. Commissioners (Del.) 55 Atl. 118; Sherman County v. Simonds, 109 U. S. 735; McDougal v. Board of Supervisors of Hennepin County, 4 Minn. 130 (184).

JAGGARD, J.

This is an action for death by wrongful act, occasioned by the negligence of the defendant city. The complaint alleged that defendant, a municipal corporation, negligently allowed waters and the water supply in its waterworks system to become infected and polluted with poisonous substances "and large quantities of filth and sewage, all of which were saturated with the germs of diseases, * * * and did carelessly, negligently and recklessly * * *

permit * * * foul, filthy and dangerous substances, common sewage, and other filth to escape into and saturate the water supply;" that by reason thereof the water became imminently dangerous to life and health, of which defendant had full notice and knowledge; that plaintiff's intestate, a citizen and resident, used the water, contracted typhoid fever, and died in consequence. The complaint set forth additional facts as [to] the right of the administrator to recover. Defendant's demurrer to plaintiff's complaint was sustained. From that order the plaintiff appeals. It is to be noted that the complaint in the case at bar set forth not a mere action against the defendant to recover damages because the city failed to provide an adequate supply of pure water. The question here is whether the city is liable for, among other things, recklessly causing dangerous substances, like common sewage and other filth, to saturate its water supply and the wells, mains, and appurtenances thereto.

1. The first essential question is whether the city is exempt because it was carrying out a governmental function, or whether it is liable because it operated the waterworks in its private or corporate function. The defendant naturally insists that it was performing merely a governmental function. There is ambiguity in that term as used in this connection. It may mean that the operation of waterworks by a municipality is infra vires as distinguished from ultra vires, or it may mean that such function is public as distinguished from private or proprietary, in which capacity the city may voluntarily assume for business purposes and for its own advantage to conduct certain operations, and is held responsible for negligence therein, although the work is done ultimately for the benefit of its citizens. Many of the authorities to which defendant refers us properly hold that a city may properly operate waterworks. They have no tendency whatever to determine whether or not the city is or is not exempt in its operation of waterworks.

Defendant also insists that the city can make no profit out of its operation of these waterworks. Doubtless this is in a general way true. At all events it may be here admitted. But the sequence which defendant seeks to draw does not at all follow; i. e., that therefore it should be exempted from all liability for mismanagement. For

the city is liable for neglect in connection with its streets, sidewalks, and sewers, from which, in their very nature, no profit is or can be made. The city operates the waterworks for profit, in the sense that it is voluntarily engaged in the same business which, when conducted by private persons, is operated for profit. The city itself makes a reasonable and varying charge. The undertaking is partly commercial. It is enough that the city is in a profit-making business. The city "is exercising a special privilege for its own benefit and advantage, notwithstanding a portion of the water is used by the city for protection against fire and in promoting the public health." Hamersley, J., in Hourigan v. City of Norwich, 77 Conn. 358, 59 Atl. 487. The English authorities regard cities in such matters as "substitutions on a large scale for individual enterprises." Mr. Justice Blackburn, in Mersey Dock Trustees v. Gibbs, L. R. 1 H. L., at page 107, approving Mr. Justice Mellor in Coy v. Wise, 5 B. & S. 440.

Finally defendant insists that it would not be sound policy to open the door and permit actions like the present to be maintained, for the reason that as a result the defendant city, as well as any other city, would be liable at any time to have the same misfortune, and would be bankrupted thereby. The assessed valuation of the city is less than $4,000,000. If the city is not exempted from liability, it is subject to claims of the same nature as the present amounting to over $10,000,000. Thus the very existence of the city is threatened, and the city subjected to total destruction, which could be of no proportionate advantage to the individuals who suffered.

It readily suggests itself as an answer to this dark prognostication that the number and nature of these cases does not appear in the record, and is not known to the court; besides, for the purposes of this case, the neglect of defendant is necessarily assumed. To the defendant, under the law, a number of defenses are available. How conclusive they may be in fact is wholly beyond any conjecture which we can recognize. Accordingly we must regard defendant's figures as purely hypothetical. The question is one of general principles recognized by the law, and not of the private views of court or counsel as to what the convenience or necessity of a particular city may

dictate under particular circumstances. The general experience of public and private waterworks is that ordinarily their operation involves no such financial disaster as defendant portrays.

It is obvious that a sound public policy holds a city to a high degree of faithfulness in providing an adequate supply of pure water. Nor does it appear why its citizens should be deprived of the stimulating effects of the fear of liability on the energy and care of its officials; nor why a city should be exempt from liability while a private corporation under the same circumstances should be held responsible for its conduct and made to contribute to the innocent persons it may have damaged. As Elliott, J., said in City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198:

"When the municipality enters the field of ordinary private business, it does not exercise governmental powers. Its purpose is, not to govern the inhabitants, but to make for them and itself private benefit. As far as the nature of the powers exercised is concerned, it is immaterial whether the city owns the plant and sells the water, or contracts with a private corporation to supply the water. It is not in either case exercising a municipal function. * * * When a municipality engages in a private enterprise for profit, it should have the same rights and be subject to the same liabilities as private corporations or individuals."

And see Powell v. City of Duluth, 91 Minn. 53, 97 N. W. 450; Gordon & Ferguson v. Doran, 100 Minn. 343, 111 N. W. 272, 8 L.R.A.(N.S.) 1049; State v. Board of Water & Light Commrs., 105 Minn. 472, 117 N. W. 827, 127 Am. St. 581. Thus in Wiltse v. City of Red Wing, 99 Minn. 255, 109 N. W. 114, a city operating the waterworks was held liable for water escaping from an embankment under the rule in Rylands v. Fletcher; "for," said Start, C. J., "although a municipal corporation, it was engaged in the business of supplying water to its inhabitants for profit, an undertaking of a private nature."

This is undoubtedly the general rule. See Piper v. City, 140 Wis. 311, 122 N. W. 730, 25 L.R.A.(N.S.) 239, 133 Am. St. 1078; Board v. Common Council, 28 Mich. 229, 15 Am. Rep. 202; Bailey

v. Mayor, 3 Hill (N. Y.) 531, 38 Am. Dec. 669. As to the reasoning of this case, however, see Darlington v. Mayor, 31 N. Y. 164, 198, 88 Am. Dec. 248. Cf. Missano v. Mayor, 160 N. Y. 123, 54 N. E. 744; Aldrich v. Tripp, 11 R. I. 141, 23 Am. Rep. 434; Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 282, 22 C. C. A. 171, 34 L.R.A. 518; City of Winona v. Botzet, 169 Fed. 321, 94 C. C. A. 563, 23 L.R.A.(N.S.) 204; Judson v. Bor-. ough, 80 Conn. 384, 68 Atl. 999, 15 L.R.A.(N.S.) 91; Wagner v. City of Rock Island, 146 Ill. 139, 34 N. E. 545, 21 L.R.A. 522; Esberg v. City, 34 Ore. 282, 55 Pac. 961, 43 L.R.A. 435, 75 Am. St. 651; Brown v. Salt Lake City, 33 Utah, 222, 93 Pac. 570, 14 L.R.A.(N.S.) 619, 126 Am. St. 828; Hourigan v. City of Norwich, supra; Lynch v. City of Springfield, 174 Mass. 430, 54 N. E. 871; City of Chicago v. Selz, Schwab & Co., 202 Ill. 545, 67 N. E. 386; City of Philadelphia v. Gilmartin, 71 Pa. St. 140, 141; Springfield v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L.R.A. 660, 51 Am. St. 667; Asher v. Hutchinson, 66 Kan. 496, 71 Pac. 813, 61 L.R.A. 58.

The cases in which a city has been held responsible or irresponsible for damages by fire consequent upon an [in]adequate supply of water are in a class of cases by themselves. The rule holding the city liable for its negligence in this case may not be consistent with the rule there announced. The law does not undertake to achieve the impossible. As was said in Gould v. Winona Gas Co., 100 Minn. 258, at page 264, 111 N. W. 254, at page 256, 10 L.R.A.(N.S.) 889: "It is evident that the ultimate justification of the inapplicability of the rule (there in question) * * * lies in the controlling regard of the common law, not for doctrine, but for common sense. Its paramount object is to work out substantial, not metaphysical, justice. Its just claim to distinction is to be found, not in the logical consistency of its applied theories, but in the practical wisdom with which it has adapted its rules to varying subject-matter and conditions."

Defendant also urges that in no case has the city been held liable for negligence in the operation of its waterworks, unless the act involved a trespass, or an invasion of a direct property right. Thus

water escaping from a city reservoir runs onto another's property and does damage; this is trespass, and there is liability. Wiltse v. City of Red Wing, supra. But if the escaping water should do damage to a person and a public highway, there would be no trespass, but the law would recognize liability. Liability of the city is recognized in the case of streets and sidewalks, which cannot properly involve trespass. Nor has defendant shown any reason for imposing liability, in the case of trespass or the breach of insurance of safety which does not logically apply to cases of negligence. On general principles, liability for negligence is more just and more generally recognized, because it is based upon culpability.

2. The question then arises whether, upon the assumption that plaintiff's intestate could have maintained an action against the defendant city, had he lived, his executor can maintain an action under our statutes. Section 4503, R. L. 1905, provides: "When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefor, if he might have maintained an action, had he lived, for an injury caused by the same act or omission." Defendant has pressed upon us very earnestly that "corporation," as here used, refers only to private corporations (see section 2839, R. L. 1905), and does not include municipal corporations. The matter is not de novo in this state. In Maylone v. City of St. Paul, 40 Minn. 406, 42 N. W. 88, and in Orth v. Village of Belgrade, 87 Minn. 237, 91 N. W. 843, the administrators of deceased persons were allowed to pursue the statutory action against the city for negligence causing death. Such has been the settled construction in practice for many years. We do not feel at liberty to change that construction.

Reversed.

On February 3, 1911, the following opinion was filed:

JAGGARD, J.

In its motion for reargument, defendant contends, in the first place, that the question of the construction of section 4503, R. L. 1905, securing the cause of action in case of death by wrongful act, that is, the question whether the defendant, a municipal corporation,

was a corporation within the meaning of that statute, is de novo in this state, notwithstanding the fact that in Maylone v. City of St. Paul, 40 Minn. 406, 42 N. W. 88, and in Orth v. Village of Belgrade, 87 Minn. 237, 91 N. W. 843, this court determined that recovery on such a cause of action could be had in this state against a municipality under that statute and sustained such recovery. It is only by ignoring these two decisions that defendant's argument is tenable. There is neither reason nor authority for so doing. It is entirely obvious that the self-contradictory proposition which defendant emphasizes, gains no force by its own iteration. No reason accordingly is thereby suggested for changing the original opinion on this point.

Defendant urges, in the second place, that the court erred in assuming that the question of the nonliability of the city on the ground of public policy was not before the court. In point of fact, the court neither so assumed nor so determined. What is said on this point was this: "The question is one of general principles recognized by the law, and not of the private views of court or counsel as to what the convenience or necessity of a particular city may dictate under particular circumstances." The court did determine that the conjectural hardship of the operation of the rule of liability of a municipal corporation in this particular case, was not an exclusive nor controlling consideration. The decision rested in effect upon this supreme consideration, namely, that public policy requires the conservation of human life, the preservation of public health, and the establishment of public sanitation on a firm and certain basis in the law. No reason whatever for changing our opinion as to the soundness of this view of public policy has been suggested.

Defendant urges, in the third place, the court overlooked what it has repeatedly held, that the cases holding cities in this state responsible for injuries caused by defective streets, in the absence of a statute making cities responsible for such injuries, are "illogical exceptions" to the general rule, and should therefore not be considered as authority in favor of liability in the cases at bar. In point of fact this is not in accordance with the actual record. The court did not overlook this familiar and elementary point. On the contrary,

113 M.—5.

it expressly adverted to the lack of philosophical and metaphysical consistency in the authorities on the question of the immunity or liability of municipal corporations in tort. The court in its opinion did not, however, undertake the equally venturesome and improper feat of ignoring the thousands of decisions on the point whose authority is unquestioned and unquestionable. Defendant contends in this connection without apparent consciousness of the humor of the situation, that the original conclusion of the liability of the city for its tort was erroneous, because it was held in Nerlien v. Village of Brooten, 94 Minn. 361, 102 N. W. 867, that a city could be restrained from using a public building as a place for selling flour. It is perfectly obvious that that decision furnishes no reason, apparent or otherwise, direct or indirect, for holding the city either immune or responsible in this case.

Finally defendant demonstrates the unsoundness of its position by this argument, namely, that this conclusion in chief "invades the province of the legislature; the legislature alone can give cities the right to furnish itself and its citizens water from a municipal waterworks, and it is for the legislature, and not the courts, to say under what conditions as to liability such cities may do so. The general rule is that cities are immune from liability for injuries resulting from torts." When this controversy was presented to this court, it was the duty of the court to determine it by reference to both precedents and principle. The result was not judicial legislation, but a judicial declaration of what the law was. That declaration made no change in the law; au contraire, it would have been judicial legislation, if the court had changed the law and decided this case in accordance with defendant's contention. The many authorities referred to in the opinion in chief and many others, declare the law to be as this court found it to be. See for example: 1 Dillon, Mun. Corp. (3d Ed.) §§ 66, 67; 5 Thompson, Neg., § 5829; 1 Smith Mun. Corp. § 802; 3 Abbott, Mun. Corp. § 892; Tiedeman, Mun. Corp. § 327b; 1 Jaggard, Torts, p. 179; 28 Cyc. 1289. Compare Ottersbach v. Philadelphia, 161 Pa. St. 111, 28 Atl. 991; Todd v. Crete, 79 Neb. 671, 113 N. W. 172; Davoust v. Alameda, 149 Cal. 69, 5 L.R.A.(N.S.) 536.

The fallacy of inferring that this defendant was not liable from a general rule of immunity is obvious. That general rule is merely this, that sometimes cities are immune and sometimes they are not. Defendant does not insist that the rule of immunity is universal or invariable, on the contrary, defendant distinctly recognizes exceptions to that rule. Whether this case fell within the rule or the exception was the very point we were called upon to decide. Defendant's argument would have had much more weight, if it had referred the court to a single case in which under like circumstances the rule of immunity had been applied. This defendant has failed to do, and we believe for the perfectly good and natural reason that there is no such authority. Certainly Hughes v. Auburn, 161 N. Y. 96, 46 L.R.A. 636, 637, to which defendant now calls our attention, is not an authority; to the contrary. This case did not involve liability in the conduct of waterworks at all. The cases concerning the inadequacy of water supply for fire departments, it is perfectly obvious, involve essentially different circumstances from those presented by the case at bar.

The motion for reargument must therefore be denied.