PETER A. BUCKMASTER, PLAINTIFF IN ERROR, V. JAMES McELROY ET AL., DEFENDANT IN ERROR.

| 20 | 557 |
| 23 | 154 |
| 20 | 557 |
| 36 | 115 |
| 20 | 557 |
| 45 | 829 |
| 20 | 557 |
| 51 | 144 |
| 20 | 557 |
| 62 | 206 |
| 62 | 805n |

Liquors: PETITION TO RECOVER DAMAGES. A petition alleging that the defendant, a licensed saloon keeper, was engaged in the business and traffic of keeping a saloon and selling intoxicating liquors therein, and that the plaintiff went into said saloon and called for whiskey, and in response to said call obtained intoxicating liquor in said saloon, by the drink, which plaintiff drank in said saloon, and thereafter, about evening of said day, started on his journey to his home, which was distant about five miles. That said intoxicating liquor, so obtained in said saloon of defendant, from said defendant, and there drank by plaintiff, greatly affected the nervous system of plaintiff and caused the plaintiff to become and be stupified and unconscious. That said day, evening and night, were very cold, that when in the following morning plaintiff regained his consciousness he was lying out of doors on the ground and both of his legs frozen to such an extent that they had to be amputated and were amputated. That plaintiff is a common laborer, and by the loss of his legs has been permanently incapacitated and deprived from following his occupation, and thereby wholly deprived of the means of livelihood, to his damage, etc. Held, To state facts sufficient to constitute a cause of action.

ERROR to the district court for Dodge county. Tried below before POST, J.

Frick & Dolezal and C. Hollenbeck, for plaintiff in error.

E. F. Gray, for defendant in error.

COBB, J.

Action was brought in the court below by Peter A. Buckmaster against James McElroy, Charles B. Veazie, and Luther I. Abbott. As the cause was disposed of in that court on demurrer to plaintiff's amended petition, I copy that pleading in full:

"AMENDED PETITION.

"The plaintiff alleges that on the 10th day of April, 1884, the said defendant McElroy, as principal, and the other defendants as sureties, executed and delivered to the state of Nebraska their certain bond in the penal sum of $5,000, conditioned that the defendant, McElroy, will pay all damages, fines and forfeitures, and penalties that may be adjudged against him under the provisions of the law regulating the sale of malt, spirituous and vinous liquors. (A copy of the bond is attached to the petition, but there being no objections to its form or substance it is omitted from the abstract.) That in accordance with said law regulating the sale of said liquors, the city authorities of the city of Fremont duly approved said bond and issued a license to said McElroy, in due form, to sell malt, spirituous, and vinous liquors in said city for the period of one year, from the 29th of April, 1884, to the 28th day of April, 1885. That in accordance with and under said license said defendant McElroy engaged in the business and traffic of keeping a saloon in said city and selling such liquors therein, and was so keeping said saloon and selling liquors during all the month of November, 1884. That on or about the —— day of November, 1884, and in the afternoon of said day, the plaintiff went into the saloon of said defendant McElroy, and there called for whiskey, and in response to said call obtained intoxicating liquor in said saloon, by the drink, which plaintiff drank in said saloon; and thereafter, about evening of said day, started on his journey to his home, which was distant about five miles from said city of Fremont. That said intoxicating liquor, so obtained in said saloon of the defendant McElroy, from said defendant, and there drank by plaintiff, greatly affected the nervous system of plaintiff, despite his efforts to the contrary, to become and be stupified, numb and unconscious. That said day and evening and night thereof were

very cold, and when plaintiff regained his consciousness, which was the following morning, he, plaintiff, was lying out of doors, on the ground, out of his journey, and both of his legs were frozen to such an extent that both of said legs had to be amputated and were accordingly amputated. That plaintiff is a common laborer, and by the loss of his legs has been permanently incapacitated and deprived from following his occupation and has thereby been wholly deprived of the means of his livelihood, and by reason of the premises has been damaged in the sum of five thousand dollars. The plaintiff alleges that he became so stupified and numb and lost consciousness and his legs were frozen and amputated, and he has been damaged as aforesaid, solely in consequence of the traffic of said defendant, McElroy, in said intoxicating liquors as aforesaid, and the sale to plaintiff, and drinking of the said intoxicating liquors sold and drank as aforesaid. Plaintiff asks judgment against defendant for five thousand dollars."

After certain preliminary proceedings, unnecessary to be further referred to here, the defendant filed a general demurrer to the said petition, and thereupon the following proceedings were had by the court, as shown by the journal entry, which I copy:

"This cause came on to be heard this day on the demurrer of defendants to the amended and substituted petition of the plaintiff, on consideration whereof, and being fully advised in said premises, the court does sustain said demurrer, to which ruling of the court the plaintiff excepted, and the plaintiff not desiring further to amend his petition, it is considered and adjudged by the court that said action be dismissed and the defendant go hence without day, recover of the plaintiff his costs herein expended, taxed at —— dollars, to which ruling and judgment the plaintiff excepted.

"The cause is brought to this court by the plaintiff, who assigns the following errors:

" 1st. The court erred in sustaining the demurrer of the defendants.

" 2d. The court erred in entering judgment in favor of the defendants, instead of in favor of plaintiff."

These assignments of error will be considered together, as they present but a single question.

The section of the statute, Comp. Stat., chap. 50, under which the action was brought, reads as follows:

" SEC. 15. The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic; he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to his traffic in intoxicating drinks," etc.

The question controlling this case arises upon the meaning of the above words of the statute, and especially the word "individuals" as there used. Does this word, as here used, include in its meaning the individual who participates in the said traffic by purchasing the identical intoxicating liquor, from the use of which the intoxication and damages result? This question has not heretofore arisen directly, nor has its consideration been necessary in any case decided by this court.

In the case of *Roberts v. Taylor*, 19 Neb., 184, which was an action by the wife for the loss of support of the husband caused by intoxication from liquor furnished him by the defendant, the court, in the opinion by the Chief Justice, say : " His testimony shows that in February, 1884, Mrs. Taylor notified the plaintiff in error not to sell her husband any more liquor; that afterwards, about August 15, finding that her husband obtained all the liquor he wanted in bottles, she went with him to the residence of the plaintiff in error and withdrew the order, and, as she testifies, told Roberts that if he would only give him a drink occasionally as he needed it, he might sell to him. It is not claimed that for liquor sold the husband in small

quantities while this request was in force, that there could be any recovery; but for any abuse of the same, no doubt there may be." Here, it must be admitted, is an intimation that the maxim *volenti non fit injuria* might be applied to cases arising under the provision of the statute which we are now considering, but the point was deemed an unimportant one in the case, and what was said thereon as not worthy to be placed in the syllabus.

I find really nothing in the cases from the courts of other states cited by counsel on either side, which to my mind tends to assist in placing a construction upon the language of our statute above quoted.

The case of *Rosencrats v. Shoemaker*, 26 N. W. R., 794, came before the supreme court of Michigan under a liquor law, the liability clause of which reads as follows:

"SEC. 3. Every wife, child, parent, guardian, husband, or other person who shall be injured in person, property, or means of support, by any intoxicated person, or by means of the intoxication of any person, shall have a right of action in his or her own name against any person or persons who shall, by selling or giving any intoxicating liquor, have caused or contributed to the intoxication of such person or persons," etc.

That case was brought by a widow against the defendant for furnishing intoxicating liquor to her late husband, who was killed, while intoxicated, by a train of cars. There was evidence tending to prove that the plaintiff authorized defendant to furnish him liquor, and procured it for him herself. This evidence was contradicted. The court was asked to charge, "If the jury find that defendant was authorized by plaintiff to furnish her husband liquors, she cannot recover damages for injuries sustained by reason of defendants having furnished her husband liquor, unless he was intoxicated when such liquors were furnished." The request was refused. The supreme court, in the opinion, say: "Under the statute * * * it is expressly de-

36

clared that whatever damages are recovered by a wife or child, shall be the plaintiff's sole and separate property, and every person injured shall have a right of action in his or her own name. As the wife sues solely in her own behalf, it is evident that she cannot complain of any evil which she herself has caused, and that if she encouraged or requested the sale of liquor to her husband, she does not stand on the footing of an innocent injured party." A new trial was awarded.

The code of Iowa, of 1873, contains a section (sec. 1557, p. 289) almost identical in its language with that of the state of Michigan above quoted. Under it the case of *Engleken v. Hilger*, 43 Ia., 563, cited by counsel for defendant in error, arose. That was an action against a saloon keeper by a wife, for selling liquor to her husband, which caused his intoxication; in which condition he inflicted personal injuries upon her. I quote the entire syllabus of the case in the supreme court :

" The wife cannot recover damages from the seller of intoxicating liquors for injuries committed by her husband upon herself while he was intoxicated, if she has contributed to his intoxication by purchasing the liquors or uniting with him in drinking them."

But the provisions of the statutes of the above states fall far short of those of our own state, both in letter and spirit; and the above cases furnish no light for the interpretation of our statute. We must therefore resort to the language of our statute itself, not only of the section declaring and fixing the liability, but of other sections of the same act, which seem to illumine the intent and purpose of the legislature, and also to those rules of construction which are of universal approval.

It will not be denied, nor can it be, that the language of the statute is broad enough to cover the damage which the willing purchaser of intoxicating liquors may sustain by reason of their use. He is embraced within the mean-

ing of the word " individuals," and there is nothing in the section, nor in the entire act, to indicate a purpose, on the part of the framers of the law, to limit the meaning of that word within narrower bounds than those of its gen-eral·and popular acceptation. There is, it must be admitted, great force in the argument of counsel for defendants in error, drawn from the cases cited, to the effect that the remedy by suit for damages attributed to the traffic in intoxicating liquors, is limited to those sufferers who are not moving parties or participants in the wrong that causes the injury complained of. But an examination of other provisions of the act will, I think, show that such a restriction was not in the mind of the legislature when framing or passing the act. The section above quoted makes the vendor liable to pay two classes of damages, one those of individuals, the other those of the community. If a willing and consenting individual shall be excepted from the provision, why not a willing and consenting community? The word community here evidently means the organized community—the organizations of the community charged with the duty of supporting the poor, the preservation of the peace and the execution of the laws.

Under the provisions of section 17 of the act, whenever any person shall become a county or city charge by reason of intemperance, a suit may be instituted by the proper authorities on the bond of any person licensed under the provisions of the said act, who may have been in the habit of selling or giving intoxicating liquors to the person so becoming a public charge, although in all such cases the community, the county, or city, has given a willing consent to the sale of the liquors which have wrought the injury. Not only so, but has received a valuable consideration for such consent. I am unable to make a distinction between the case of the willing and the consenting individual and that of the, at least, equally willing and consenting community.

Looking then to the intent of the legislature, as indicated by the language used in these several sections, I find no warrant for denying the remedy by action to the individual who has called and paid for the liquors which have caused the injury directly to himself.

While I do not conceive that the conclusion above drawn would suffer from the application of the strictest rule of construction, yet I do not think the rule of the English courts, and which once prevailed in this country, that statutes which alter common law remedies or affect common law rights must be strictly complied with, as prevailing with us at this day.

Mr. Sedgwick, in his work on the construction of constitutional and statutory law, after discussing this question, as well in the light of reason as of the authorities, at page 274 says, "It would appear, therefore, that the doctrine that statutes in derogation of the common law are to be strictly construed, has now no foundation in our jurisprudence." The same author defines a remedial act to be one of those "made from time to time to supply defects in the existing law, whether arising from the inevitable imperfection of human legislation, from change of circumstances, from mistake, or any other cause," p. 32; and at page 309, he quotes from Dwarris, "that the words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy." He also cites the case of *St. Peters, York, Dean, and Ch. v. Middleborough*, 2 Y. & J., 196, to the effect that "It is by no means unusual in construing a remedial statute to extend the enacting words beyond their natural import and effect in order to include cases within the same mischief."

It cannot be doubted that the statute which we are considering comes within the class of remedial statutes, nor that under the above authorities we have ample warrant, were it necessary, for giving it the most liberal construction in the interest of justice and humanity.

I conclude, therefore, that the petition demurred to in this case, states a cause of action in the plaintiff against the defendants, and that the demurrer was erroneously sustained.

The judgment of the district court is reversed, the demurrer overruled, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

MAXWELL, CH. J., concurs.

REESE, J., dissenting:

I cannot agree to the conclusion reached in this case by the majority of the court. I do not believe it was the intention of the legislature to create a liability in favor of any person who by his own voluntary act contributed to, and in fact caused the injury complained of. While I am in favor of the enactment of such laws as will reduce the evils growing out of the traffic in intoxicating liquors to a minimum, or to destroy them altogether, yet I do not believe a law has yet been enacted which permits an individual, by his own wrong, to create a liability in favor of himself and against those participating with him in the wrong.