### COUNTY OF HENNEPIN v. COUNTY OF HOUSTON.[1]

November 25, 1949.

No. 34,952.

[1]Reported in 39 N. W. (2d) 858.

*Michael J. Dillon,* County Attorney, and *Edward J. Shannon,* Assistant County Attorney, for appellant.

*L. L. Roerkohl,* County Attorney, for respondent.

MATSON, JUSTICE.

Appeal from a judgment for defendant in an action by Hennepin county to recover $3,205.69 for the care and treatment in the Glen Lake Sanatorium of Myrtle Collins, a resident of Houston county.

Myrtle Collins, who had come to Minneapolis for prenatal and maternity care, gave birth to an illegitimate child on March 9, 1945. While in the Minneapolis General Hospital, it was discovered that she had tuberculosis. On April 13, 1945, she was admitted to the county sanatorium at Glen Lake. On April 30, 1945, upon report by the city commissioner of health of Minneapolis to the Hennepin county board of commissioners, she was committed by said board—without notice to Houston county—to said sanatorium pursuant to M. S. A. 144.44, which provides:

"Any health officer shall have the right to report to the board of county commissioners of his county any person afflicted with tuberculosis *whom he considers a menace to his family or other persons,* and upon the approval of the board of county commissioners, the county sheriff shall remove the person and place him in a public sanatorium or hospital where he shall remain until discharged therefrom by the superintendent of the institution." (Italics supplied.)

Myrtle Collins remained in Glen Lake Sanatorium until April 4, 1947. On August 24, 1945, a representative of the sanatorium wrote

to the Houston county board of commissioners asking if they would guarantee the cost of her maintenance and treatment. Houston county denied responsibility for her care. In a contested proceeding held pursuant to § 376.18, the Hennepin county district court on July 10, 1946, determined Miss Collins to be a resident of Houston county. No appeal was taken, and the judgment entered therein is now *res judicata* on the issue of residence. In the present action, in which judgment was entered for defendant, plaintiff proceeded on the theory that the determination of Miss Collins' residence under § 376.18 rendered the county of Houston liable for the entire cost of maintenance. In finding for defendant, the trial court was of the opinion that § 144.44 is a part of the so-called general communicable diseases act and that any commitment thereunder is strictly a quarantine measure to safeguard the health of the community where the act of commitment takes place, and that such community, and the county in which it is located, are responsible for the cost of sanatorium treatment irrespective of the patient's residence. In effect, the trial court concluded that a patient's county of residence is responsible for the cost and treatment of the patient only in those cases where the patient is placed in the sanatorium of another county pursuant to the provisions of §§ 376.33 and 376.34.

 Where a person afflicted with tuberculosis is admitted to a county sanatorium by virtue of commitment under § 144.44—and not pursuant to § 376.33—does such person become a sanatorium patient within the meaning of § 376.18 of the present so-called county sanatoria act (see, §§ 376.01 to 376.52) so as to make the patient's county of residence responsible for the cost of treatment and care, or does such person become a patient within the meaning of the communicable diseases act (see, §§ 145.05, 145.06), whereby the county of residence incurs no responsibility? It is all a matter of legislative intent, and where such intent is not revealed by the statutory language itself, we must examine the objective footprints on the trail of legislative enactment.

Long before tuberculosis became a separate and distinct subject of special legislation, we had the so-called general communicable

diseases act, which originated with L. 1883, c. 132, and which is now in its present form codified as §§ 145.05 to 145.07. It was enacted to prevent the spread of communicable diseases by confining persons afflicted therewith to their place of abode by a system of quarantine, which was not lifted until the victims had recovered and their living quarters had been fumigated. In the light of the then existing medical knowledge, it seemed to be an effective way of protecting a community—at its own expense—from the spread of contagious diseases such as smallpox, diphtheria, and even tuberculosis. The true nature of tuberculosis had then scarcely been discovered, and the need for prolonged and supervised treatment by specialists was yet to be recognized.[2] By the year 1903, however, the need for institutional care had become so widely recognized that the legislature passed an act providing for a state sanatorium for consumptives. (L. 1903, c. 316, since amended and now codified as §§ 251.01 and 251.02.) It was the first step in an unfolding legislative program dealing with the "white plague" as a separate and distinct disease. Six years later came the first so-called county sanatoria act. (L. 1909, c. 347.) In 1913, a second county sanatoria act was enacted. (L. 1913, c. 500, now codified as §§ 376.28 to 376.42.) Supplementary to these sanatoria acts, which established institutional facilities for tubercular treatment, the legislature enacted special statutes for the control of the disease by making provision for nursing, medical service, and for the maintenance and treatment of poor persons, *as well as providing for the removal of tubercular persons from dangerous contact with their families and the general public.* The first of these control acts appeared in 1911 (L. 1911, c. 116, now codified as § 376.50), and the second in 1913 (L. 1913, c. 434). Section 3 of the second or the 1913 control act is the origin of § 144.44, the statute under which Miss Collins was committed to Glen Lake. Statutes are presumed to have been passed with deliberation and with full knowledge of

---

[2]"Tubercle bacillus," the microorganism which causes tuberculosis, was discovered in 1882 by the German physician and bacteriologist, Robert Koch. See, Webster's New International Dictionary (2 ed.) 1947, definition "tubercle bacillus."

all existing ones on the same subject. 6 Dunnell, Dig. & Supp. § 8984. It is significant that the second county sanatoria act and the second control act, both dealing with the subject of tuberculosis, were enacted at the same session of the legislature. What is of even more significance is that both acts, when in bill form—together with a bill for the amendment of the state sanatorium act—were by a single motion in the House of Representatives placed on General Orders to *"be considered together."* (Italics supplied.) (See, Journal of the House, 1913, p. 1059, with reference to H. F. No. 759 and S. F. Nos. 201 and 103.) Clearly, the legislature regarded these acts as supplementary to each other and as integral parts of a unified plan for the treatment of tuberculosis. In the light of the legislature's action in considering these measures as involving a single subject or problem, there is an unusually strong reason for applying the rule of statutory construction that when statutes are *in pari materia* they are to be construed harmoniously and together. 6 Dunnell, Dig. & Supp. § 8984. It follows that by the enactment of § 144.44, in conjunction with the state and county sanatoria acts, the legislature made the treatment and control of tuberculosis a health problem separate and distinct from all other communicable diseases, and that therefore the general communicable diseases statute no longer has any application to that disease. No doubt, it was apparent to the lawmakers that this disease had little chance of being arrested unless the victims—whether they recognized the need themselves and whether they had the means to provide for their own medication—were removed to an institution for systematic and prolonged treatment. In construing a statute for the ascertainment of legislative intent, the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained may all be considered. § 645.16.

Section 376.33 provides that tubercular victims—who reside outside of a county or counties maintaining a sanatorium—may make individual application for admission to the sanatorium, or that any city, village, town, or county may so apply on behalf of any of its charges. Pursuant to such application, the patient may be

admitted upon the payment of a weekly sum to be fixed by the county sanatorium commission, *"provided, that the director of social welfare shall approve of the admission of such patient and the sum so fixed."* (Italics supplied.) Defendant contends that the provision for the approval of sanatorium charges by the director of social welfare is for the protection of the county of residence, and that the failure to provide for such approval in cases of commitment under § 144.44 indicates a legislative intent that the county of residence should have no responsibility for any commitment thereunder. We do not agree. It is to be noted that no person afflicted with tuberculosis may be committed under § 144.44 unless he is considered to be *"a menace to his family or other persons."* (Italics supplied.) The menace may arise because of the advanced stages of the disease or by reason of the close proximity in which the afflicted person must live or come into contact with his family or the general public. No doubt the legislature was of the opinion that a menace of that nature required prompt action for the protection of the public, and that it was imperative to have the afflicted person placed in a sanatorium without the long delay that would inevitably result if, prior to commitment and admission, it was first necessary to determine the issue of residence and thereafter secure for nonresidents the approval of the director of social welfare. The legislature could reasonably conclude that a scale of reasonable sanatorium charges would be established with respect to the cases admitted under § 376.33, and that this scale would naturally be applied to commitments under § 144.44 as a protection for the patient and the county of his residence.

We attach no particular significance to the provision in § 376.34 to the effect that:

"* * * The provisions of this section shall in no manner operate to abridge or repeal the provisions of section 144.44 relating to the commitment of persons afflicted with tuberculosis."

It first appeared in the statute by virtue of an amendment adopted at the 1929 session of the legislature (L. 1929, c. 255), when the

residential qualifications of tubercular persons residing in a county maintaining a sanatorium were changed so that such person would be eligible for admission *only* if he had been a resident of the county "throughout the year immediately preceding application." The proviso was obviously inserted to make certain that the year's residence requirement should not be construed to prevent a commitment under § 144.44. If the provision has any significance, it is to show that the legislature thereby recognized that § 144.44 was an essential part of the county sanatoria act in the disposition of emergency cases.

The decisions of Board of Co. Commrs. of Marshall County v. Board of Co. Commrs. of Roseau County (1904), 93 Minn. 240, 101 N. W. 164, and Town of Louriston v. Board of Co. Commrs. of Chippewa County (1903), 89 Minn. 94, 93 N. W. 1053, are of little value. They were decided before the original enactment of § 144.44 and prior to the time when the legislature evinced its intention that tuberculosis should be dealt with as a special disease separate from all other communicable diseases.

We are not unmindful that certain opinions of the attorney general are to the contrary. Although opinions of the attorney general are not binding upon this court, nevertheless, with respect to questions properly submitted, such opinions, especially when of long standing and when accompanied by administrative reliance thereon, are entitled to and receive careful consideration. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11. Most of the cited opinions were either addressed to issues not involved herein, or failed to consider § 376.18, or were given prior to the enactment of such section, which provides that the county of which a tubercular patient is found to be a resident "shall be charged with the entire cost of his care and treatment." One opinion, not in accord with our holding herein, was issued in the instant case prior to the commencement of the suit. Although our decision is to the contrary, we recognize a genuine basis for divergence of opinion. We agree with the trial court that there is a desperate need for a complete revision, clarification, and integration of our health laws in the interest of administrative

efficiency and the elimination of ambiguity, which is so fruitful of expensive litigation.

We are aware that our determination of legislative intent places counties found to be the residence of tubercular patients who are committed under § 144.44 in the inequitable situation of having sanatorium charges imposed upon them without reasonable notice and without reasonable opportunity to determine where sanatorium treatment may be most reasonably obtained. Legislative intent, however, may not be defeated by reason of the fact that fulfillment of that intent creates an inequitable situation. The elimination of inequities must be left to the legislature.

The judgment herein is reversed, and the case is remanded to the trial court with directions to make a specific finding of the reasonable value of the treatment and maintenance given Miss Collins at the Glen Lake Sanatorium, and to enter judgment therefor in favor of the plaintiff.

Reversed.