RICHARD STABS v. CITY OF TOWER.[1]

December 23, 1949.

No. 35,013.

[1]Reported in 40 N. W. (2d) 362.

*Stone, Manthey & Carey,* for appellant.
*D. A. Bourgin* and *W. J. Kraker,* for respondent.

PETERSON, JUSTICE.

This is an appeal from an order overruling a demurrer to two causes of action alleged in the complaint.

Two questions are presented for decision, viz.:

(1) Whether a municipality owning and operating an on- and off-sale exclusive liquor store pursuant to statutory authorization (M. S. A. 340.07, subd. 5) is required to file the bond required by statute (§ 340.12) of on- and off-sale liquor dealers; and

(2) Whether the owner and operator of an on- and off-sale exclusive liquor store is liable to a patron for harm self-inflicted as a consequence of having become so highly intoxicated that he did not know what he was doing from drinking intoxicating liquor furnished him in violation of statute (§ 340.73, subd. 1) by the operator when the patron was "obviously" intoxicated.

Four separate causes of action were alleged in the complaint. The third and fourth causes of action were dismissed at the hearing on the demurrer. The trial court overruled the demurrer as to the first and second causes of action. On the appeal, the order overruling the demurrer is challenged only so far as it relates to the first cause of action.

The allegations of the first cause of action, so far as here material, are that defendant owned and operated a municipal liquor store; that by its servants and employes it furnished intoxicating liquor to plaintiff in such store when he was "obviously" intoxicated and that he became so highly intoxicated he did not know what he was doing; that while he was in such highly intoxicated condition he was arrested by police officers of defendant and lodged in its jail; and that, while in jail, as a consequence of his intoxicated condition, he broke certain plumbing fixtures and came in contact with them in their broken condition in such a way as to sustain severe bodily injuries. We take judicial notice of the facts that defendant is a city of the fourth class and, as such, is a municipality other than a city of the first, second, or third class and entitled under § 340.07, subd. 5, to own and operate a municipal liquor store, and that defendant is governed by a home rule charter (adopted June 18, 1928). There are no allegations as to whether the liquor store owned and operated by defendant is an "exclusive liquor store" as defined in the statute just cited or whether defendant filed a liquor dealer's bond. The complaint was construed below as meaning that the store in question was of the character mentioned and that defendant had not in fact filed such a bond. On the appeal, defendant in effect admits that such construction accords with the facts.

Plaintiff predicates his right to recover upon two grounds: (1) That, by reason of the fact that defendant violated § 340.73, subd. 1,[2] by furnishing plaintiff intoxicating liquor when he was obviously intoxicated, defendant violated the conditions of the bond required by § 340.12[3] of on- and off-sale liquor dealers and thereby

[2]Section 340.73, subd. 1, reads:

"It shall be unlawful for any person, * * * to * * * furnish, * * * any spirituous, vinous, malt, or fermented liquors *. * * to any intoxicated person, * * *."

[3]These conditions are:

"As to 'Off sale' and 'On sale' dealers:

"(a) That the licensee will obey the law relating to such licensed business;

"(b) That the licensee will pay to the municipality when due all taxes, license fees, penalties and other charges provided by law;

became liable to plaintiff for a penalty measured by the actual damage sustained by him as a consequence of such illegal acts on defendant's part; and (2) aside from any right to recover a penalty, defendant is liable in tort by reason of furnishing plaintiff intoxicating liquor in violation of § 340.73, subd. 1, when he was "obviously" intoxicated, thereby causing him to become so highly intoxicated that he did not know what he was doing and to inflict upon himself, while he was in jail, the injuries mentioned.

In support of the first claimed ground of recovery, plaintiff contends that under § 340.12, as construed in Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821, the liability of an operator of an on- and off-sale exclusive liquor store to a patron upon his liquor dealer's bond for harm caused by an illegal act in connection with the operation of his establishment is not for a tort, but for a penalty measured by the damages sustained by the patron. In support of the second claimed ground of recovery, plaintiff contends that by furnishing liquor to him when he was an "intoxicated person" defendant violated a statute (§ 340.73, subd. 1) enacted for the protection of intoxicated persons and the others therein mentioned

"(c) That in the event of any violation of the provisions of any law relating to the retail 'Off sale' and retail 'On sale' of intoxicating liquor, such bond or policy shall be forfeited to the municipality in which such license was issued;

"(d) That the licensee, will pay to the extent of the principal amount of such bond or policy, and damages for death or injury caused by or resulting from the violation of any provisions of law relating thereto, and in such cases recovery under this subdivision '(d)' may be had from the surety on this bond or policy. The amount specified in such bond or policy is declared to be a penalty, the amount recoverable to be measured by the actual damages; provided, however, that in no case shall such surety be liable for any amount in excess of the penal amount of the bond or policy.

"All such bonds or policies shall be for the benefit of the obligee and all persons suffering damages by reason of the breach of the conditions thereof. In the event of the forfeiture of any such bond or policy for violation of law, the district court of the county wherein such licensed business was carried on may forfeit the penal sum of said bond or policy, or any part thereof, to the state or municipality named as obligee in such bond or policy." As amended by L. 1945, c. 313, § 1.

as a class unable to exercise self-protection, thereby rendering itself liable to plaintiff as a member of the protected class for harm befalling him as a consequence of such violation of the statute. Plaintiff expressly disclaims liability on defendant's part under the civil damage act (§ 340.95).

Defendant contends: (1) As to the first ground of liability asserted, that it was not required, as the owner and operator of a municipal on- and off-sale exclusive liquor store, to file the liquor dealer's bond prescribed by § 340.12; and that consequently it is not liable for the penalties provided therein for violation of the conditions of such a bond; and (2) as to the second ground of liability asserted, that, while furnishing intoxicating liquor to an intoxicated person is illegal under § 340.73, subd. 1, it was not the purpose of that section to confer upon a buyer of intoxicating liquor who voluntarily becomes intoxicated by the consumption thereof a right of action against the seller for harm occurring to him as a consequence of his intoxicated condition.

The arguments below upon the hearing of the demurrer and the presentation here have proceeded upon the assumption that, if a municipality as the owner and operator of an on- and off-sale exclusive liquor store is required to file a liquor dealer's bond under § 340.12, defendant is liable for the penalties provided by the statute for violation of the conditions of such a bond, regardless of whether it had in fact filed one. Under the rule of the law of the case—which is that, where parties consent to try their case upon a particular theory of what the law of the case is, such rule will be applied on appeal (Edelstein v. D. M. & I. R. Ry. Co. 225 Minn. 508, 31 N. W. [2d] 465; 1 Dunnell, Dig. & Supp. § 404)—we shall assume with the consent of all concerned for purposes of decision, but without so deciding, that defendant's liability, if any, for such a penalty is unaffected by its failure to file a liquor dealer's bond.

■ Whether, as the consequence of violating the conditions of the liquor dealer's bond required by § 340.12 by illegally furnishing plaintiff intoxicating liquor, defendant became liable, under the doctrine of Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R.

821,[4] for a penalty measured by plaintiff's actual damages, depends upon whether a municipality owning and operating an on- and off-sale exclusive liquor store is required by the statute to file such a bond. The question thus raised is one of statutory construction.

In answering that question we should endeavor to discover and to effectuate the legislative intent (§ 645.16; Wheeler Lbr. B. & S. Co. v. Seaboard Surety Co. 218 Minn. 443, 16 N. W. [2d] 519). In so doing, we should consider the "contemporaneous legislative history" (§ 645.16[7]), "legislative and administrative interpretations of the statute" (§ 645.16[8]), the mischief to be remedied and the objects sought to be accomplished by the statute (§ 645.16[3,4]; Governmental Research Bureau, Inc. v. Borgen, 224 Minn. 313, 28 N. W. [2d] 760), other statutes relating to the same subject matter—the regulation and control of the sale and use of intoxicating liquors—so far as they shed light on the question (County of Hennepin v. County of Houston, 229 Minn. 418, 39 N. W. [2d] 858; State ex rel. Bergin v. Fitzsimmons, 226 Minn. 557, 33 N. W. [2d] 854; State ex rel. Interstate, etc., v. M.-St. P. Metropolitan Airports Comm. 223 Minn. 175, 25 N. W. [2d] 718; Foley v. Whelan, 219 Minn. 209, 17 N. W. [2d] 367); and the desirability of avoiding an absurd result if that can be done without doing violence to the language of the statute (§ 645.17[1]; State v. Industrial Tool & Die Works, Inc. 220 Minn. 591, 21 N. W. [2d] 31).

The statute to be construed (§ 340.12), so far as here material, provides in effect that "every person" desiring an on- and off-sale exclusive liquor store license shall make written application therefor to the governing body of the municipality where the store is to be located; that in such application the applicant shall give such information concerning himself as may be required by the local governing body; that an applicant for an on-sale license shall either file with the clerk of the municipality a surety bond or liability insurance policy in amount from $3,000 to $5,000, as the local governing body shall determine, or in lieu thereof deposit an equal amount

---

[4]The rule of the Mayes case, *supra*, was reiterated in Philips v. Aretz, 215 Minn. 325, 10 N. W. (2d) 226.

of cash; that if a bond is filed the municipality shall be named therein as obligee, conditioned as prescribed by the statute; and that in certain cases the district court may order the bond forfeited to the "municipality named as obligee in such bond." Other related sections are: § 340.07, subd. 5, which defines an "exclusive liquor store" and provides that such stores shall be under the control of an individual owner or manager and that "if located in municipalities other than cities of the first, second, and third class [defendant is a city of the fourth class], it may be owned and operated by the municipality as the governing body thereof shall direct"; § 340.13, subd. 1, prohibiting the issuance of exclusive liquor store licenses in any municipality maintaining an exclusive liquor store[5]; and numerous others referring to a license as being *granted* (§ 340.11, subds. 1, 4, 8, 9, and 11) or as being *issued* (§ 340.11, subds. 2, 5, 6, 7, 10, and 12; § 340.13). Section 645.44, subd. 6, provides that the word "person" *may* extend to and be applied to bodies politic and corporate.

Defendant contends that all the sections, other than the one last mentioned, betoken a legislative intention that no such bond shall be required in a case like this. Plaintiff contends that, whatever arguments may be made from such statutory provisions, the provisions of § 340.12 that every *person* granted a license shall file a bond, and of § 645.44, subd. 6, that the word "person" may include a municipality, compel the conclusion that a municipality owning and operating an exclusive liquor store is a *person* and, as such, is required to give such a bond.

At the outset, we think it clear that unless a municipality is required to obtain a license to own and operate an on- and off-sale exclusive liquor store it is not required to file a bond. Section 340.12 provides: "An applicant for an 'Off Sale' license shall file with the clerk of the proper municipality a bond * * *."

The licensing of liquor establishments and the public ownership thereof are so radically different as to compel the conclusion that the provisions of law relative to licensing have no application to

---

[5]This is the general rule, but there may be some exceptions applicable in particular situations. See, § 340.11, subd. 9.

publicly owned establishments, and that consequently the provision of § 340.12, requiring a licensee to file a bond, has no application to a municipally owned and operated exclusive liquor store authorized by § 340.07, subd. 5. The purpose and object of both systems are regulation by exercise of the police power of the traffic in intoxicating liquors to protect and to promote the public health, safety, morals, and welfare.

The licensing system contemplates private ownership of liquor establishments with governmental regulation to eliminate and suppress the evils incident to the business. Under the licensing system, which has been the traditional mode of regulation, the entire business of manufacturing and selling intoxicating liquor is illegal except as to licensees. Licenses are granted by governmental authority to permit a business, which without the license would be illegal, to be legally operated. Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538; Blatz Brg. Co. v. Collins, 69 Cal. App. (2d) 639, 160 P. (2d) 37; Commonwealth v. Mutual Union Brg. Co. 252 Pa. 168, 97 A. 206; 53 C. J. S., Licenses, §§ 1 and 2. See, State ex rel. Interstate, etc., v. M.-St. P. Metropolitan Airports Comm. 223 Minn. 175, 25 N. W. (2d) 718, *supra;* Alabama Power Co. v. Federal Power Comm. 75 App. D. C. 315, 128 F. (2d) 280, certiorari denied, 317 U. S. 652, 63 S. Ct. 48, 87 L. ed. 525.

Publicly owned liquor dispensaries, including municipal liquor stores, are established pursuant to statutory authorization. The statutory authorization operates as a grant of whatever permission is required to establish such stores. A license, in the very nature of things, would add nothing to such authorization, and the granting of one would be a useless act. Publicly owned liquor establishments are governmental agencies established in the exercise of the police power to accomplish governmental purposes.[6] Murray v. Wilson

[6]There is language to the contrary in Ohio v. Helvering, 292 U. S. 360, 54 S. Ct. 725, 78 L. ed. 1307, and South Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 50 L. ed. 261, 4 Ann. Cas. 737, but this was overruled in New York v. United States, 326 U. S. 572, 66 S. Ct. 310, 90 L. ed. 326. See, Harrison v. Wyoming Liquor Comm. 63 Wyo. 13, 177 P. (2d) 397. The views expressed in the last two cited cases accord with ours in the Waseca munic-

Distilling Co. 213 U. S. 151, 29 S. Ct. 458, 53 L. ed. 742; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A. L. R. 283, and Annotation; Equitable L. & S. Co. v. Town of Edwardsville, 143 Ala. 182, 38 So. 1016, 111 A. S. R. 34; Dispensary Commrs. v. Thornton, 106 Ga. 106, 31 S. E. 733; Fowler v. Harris, 174 Md. 398, 200 A. 825; Council of Town of Farmville v. Walker, 101 Va. 323, 43 S. E. 558, 61 L. R. A. 125, 99 A. S. R. 870; Riggins v. District Court, 89 Utah 183, 51 P. (2d) 645; 30 Am. Jur., Intoxicating Liquors, §§ 217 to 220, and cases there cited; 48 C. J. S., Intoxicating Liquors, §§ 211, 212. See, discussion in Harrison v. Wyoming Liquor Comm. 63 Wyo. 13, 177 P. (2d) 397. In the Fowler case, *supra,* the court said that a state dispensary is in no sense a (174 Md. 402, 200 A. 826) "private business or enterprise or property." Because publicly owned liquor dispensaries are governmental agencies established to accomplish governmental purposes, it was held in the Dispensary Commrs. case, *supra,* that they were not subject to a tax imposed upon *all* dealers in intoxicating liquors. It was there held that it was plainly unreasonable to think that the government would in effect tax itself. By analogy, it is just as unreasonable to think that, after the state had authorized a municipality to own and operate a liquor store and thus had conferred upon it as full and complete right to do so as any license could ever do, it would require in addition the granting of a license to the municipality to legalize what already it had made legal. Because this is true, the cited case is regarded as authority for the rule that "Public officers appointed to conduct the traffic in intoxicating liquors do not require licenses." 48 C. J. S., Intoxicating Liquors, § 127.

That public ownership and operation of liquor establishments such as a municipal liquor store differs essentially from regulation of the liquor traffic by the licensing system is confirmed by the avowed purposes and objects of such publicly owned and operated liquor stores. To begin with, it is said that publicly owned and operated liquor dispensaries (this applies to municipal liquor stores) are the

ipally owned coal and wood yard case (Central Lbr. Co. v. City of Waseca, 152 Minn. 201, 188 N. W. 275).

outgrowth of dissatisfaction with the licensing system. State ex rel. George v. Aiken, 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345. The intention is not only to depart from the licensing system, but to substitute an entirely different one for it. The thought is that government can more effectively control and regulate what it owns and operates than something which is privately owned and operated. For example, in Commonwealth v. Stofchek, 322 Pa. 513, 520, 185 A. 840, 845, the court said that under the state liquor store system the state could "exercise a greater measure of control than was possible under the former system [of licensing]." Similar views are expressed in other cases. The regulation deemed necessary is to be achieved through ownership and operation rather than by policing. Thus, the conclusion follows that the provisions of law requiring liquor store operators to be licensed and to file bonds are inapplicable to municipal liquor stores.

Of course, we intimate no opinion as to the merits of the two systems of regulation mentioned, for the plain reason that it is no part of the judicial function to do so. It may be, as asserted upon the argument, that the validity of the reasons advanced for municipal liquor stores is challenged by the facts here, which showed that defendant not only illegally served intoxicating liquor in its store, but also that after plaintiff had become intoxicated as a consequence thereof he was lodged in defendant's jail by its police officers. Such matters are for legislative consideration and not for the court.

The provision of § 340.13, subd. 1, to the effect that no license for an exclusive liquor store shall be issued "in any municipality maintaining an exclusive liquor store" is an explicit legislative declaration that in such a municipality no license shall be issued at all. The language is comprehensive enough to include municipally and privately owned exclusive liquor stores. Notwithstanding the prohibition against issuing a license in such a municipality, the statutory provision assumes the operation of a municipality owned liquor store to be legal. If a license were required for a municipal exclusive liquor store, an exception so providing would have been added. The prohibition against issuing a license in any case, the legislative assump-

tion that no license for a municipal exclusive liquor store is required, and the legislative omission to provide by exception for the issuance of such licenses are rather persuasive that none should be required.

Such a view accords with the legislative and administrative interpretation of the statute. Section 340.731 (L. 1949, c. 415, § 1), by prohibiting minors in certain cases from entering for the purpose of purchasing, etc., any premises "licensed" for the sale of intoxicating liquors "or any municipal liquor store," adopts licensing as the basis of classification and includes in one class those which are licensed and in another municipally owned stores as those which are unlicensed. Thus the legislative interpretation of the meaning of the statute is that no license or bond is required of a municipal liquor store. Almost immediately after the enactment in 1934 of the liquor control act (§§ 340.07 to 340.40), it was construed administratively as not requiring a license or bond of municipal liquor stores. Report Attorney General, 1934, No. 559. It was stated upon the argument as an undisputed fact that the state liquor control commissioner has adhered consistently ever since to such administrative construction in administering the statute. Thus, the administrative interpretation also is in accord with such a view.

Implicit in the subject matter of § 340.12 are numerous tokens of legislative intention negating any requirement of a license and bond in a case like this. An application for a license, a license, and a bond by the licensee with surety to secure performance of the conditions upon which the license was granted are appropriate where a license is granted to the operator of a privately owned licensed business; but they are clearly inappropriate and useless in a case where the licensing authority owns and operates the business. It would be useless and extremely absurd to require (a) a municipality to file such an application, for the reason that it already has the information concerning itself which it is the purpose of an application to furnish concerning the applicant; (b) a license, for the reason that a municipality has without a license all the means and power to control its activities as the owner and operator of an exclusive liquor store that it could ever have to control and regulate

by a license a privately owned one; and (c) a bond, for the reason that a municipality can by its own action secure the performance of acts which in the case of a licensee—a separate person or entity—it can secure only through some sort of compulsion. Besides, and equally absurd, would be the provisions for the filing of such a bond by the municipality with its clerk (in effect this would require a licensee to file with himself a bond to secure of it compliance with the conditions upon which his license was issued), and the approval of the municipality's bond as licensee by its governing body (in effect this would be approval by a licensee of his own bond).

Furthermore, a requirement that a municipality must obtain a license to own and operate such a liquor store and to file a bond as such owner and operator would involve absurdities, which under the rules above stated ought to be avoided, such as the legal, if not the physical, impossibility of at one and the same time occupying a dual relation to itself in such bipartite relationships as licensor-licensee, grantor-grantee, and issuer-recipient, and in the tripartite surety relationship that of obligor and obligee. The licensor-licensee relation is a bipartite one having two parties, viz., the governmental licensor and the private licensee. The relation cannot exist without both. Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538. The same is true of the grantor-grantee relation, at least as applied to the granting of a license. 53 C. J. S., Licenses, §§ 1 and 2. Likewise, the issuer-recipient relation, where, as here, it means the granting of a license by a governmental authority to a liquor store owner and operator, requires two persons the same as the grantor-grantee relation. The words "grant" and "issue" are used interchangeably in the statute as synonymous. Suretyship is a tripartite agreement, to which there are three indispensable parties—an obligor, a surety, and an obligee. 50 Am. Jur., Suretyship, § 3. There can be no true suretyship if any one is lacking. Stearns, Law of Suretyship (4 ed.) § 5; Restatement, Security, § 82. Here, if plaintiff's contention were to prevail, defendant would occupy the dual relation of obligor and obligee on the bond, which it would not only

be required to file but also to approve. All this is so plainly absurd that we ought not construe the statute as so intending.

Finally, it must be apparent that plaintiff's contention, that a municipality is a person required to give a bond as a liquor dealer, for the reason that § 340.12 provides that every "person" applying for a license shall file a bond and § 645.44, subd. 6, provides that the word "person" may extend to a municipality, must yield to the manifestations mentioned of a contrary legislative intention. The use of the word "may" in § 645.44, subd. 6, shows that the meaning which may be given thereunder to the word "person" is permissive; and that, whether in a particular case the word "person" was used as meaning a municipality, is to be determined as in other cases by the application of settled rules of construction. For example, the word "person" may include even the state (see, Ohio v. Helvering, 292 U. S. 360, 54 S. Ct. 725, 78 L. ed. 1307, *supra,* the reasoning of which was otherwise disapproved in New York v. United States, 326 U. S. 572, 66 S. Ct. 310, 90 L. ed. 326). But here, as we have pointed out, the legislative intent clearly was that no license or bond should be required of a municipality as the owner and operator of an exclusive liquor store. Under well-settled rules, the legislative intent should be given effect.

The conclusion necessarily follows that defendant is not required by § 340.12 to give a liquor dealer's bond, and that it is not liable for the penalty prescribed therein for violating the conditions of such a bond.

■ Lest there be misapprehension as to scope of our decision on the point whether an on-sale liquor dealer is liable for harm resulting as the consequence of illegal sale of intoxicating liquor to a person obviously intoxicated, we think that the complaint should be construed as alleging that, while plaintiff was intoxicated when defendant furnished intoxicating liquor to him, he knew what he was doing when he purchased and consumed the liquor. In construing § 610.09, providing that where the actual existence of a particular purpose, motive, or intent is a necessary element to constitute a particular species or degree of crime, the fact of intoxica-

tion may be taken into consideration in determining the existence of such purpose, motive, or intent, we have held that proof that defendant was intoxicated without a showing that he was mentally incapable of entertaining a criminal intent was no defense, for the reason that drunken persons are responsible for their acts. State v. Weltz, 155 Minn. 143, 193 N. W. 42; State v. Corrivau, 93 Minn. 38, 100 N. W. 638; State v. Herdina, 25 Minn. 161. As said in State v. Welch, 21 Minn. 22, 28:

"* * * A drunken man, equally with a sober man, is presumed to know and intend the acts which he does, and to remember the acts which he has done."

Here, the complaint distinguishes between the degrees of plaintiff's intoxication—it alleges that when defendant sold the liquor to him he was intoxicated and that after he had consumed it he became "highly" intoxicated. There is no allegation that at the time of sale he did not know what he was doing, and the presumption is that he did know. In Sworski v. Colman, 204 Minn. 474, 283 N. W. 778, after reviewing the authorities, we held that the vendor of intoxicating liquor illegally sold is not liable to the vendee for harm occurring to him as the consequence of his intoxication resulting from consuming such liquor. Thus, the argument was rejected that statutes prohibiting the sale of intoxicating liquor to certain persons are intended to confer upon such persons as a class unable to exercise self-protection a right of action for harm resulting from the consumption of liquor thus illegally sold. Recently we applied the rule in Cavin v. Smith, 228 Minn. 322, 37 N. W. (2d) 368. We adhere to the rule and see no necessity again to go over the ground covered in the Sworski case. The authorities point out that the rule should be adhered to, for the reasons that the subject of civil liabilities and criminal penalties for violating statutes regulating the sale of intoxicating liquors has been regulated by the enactment of statutes relating to such matters, and that consequently the courts cannot adopt rules which the legislature did not when it considered the matter. Henry Grady Hotel Co. v. Sturgis, 70 Ga. App. 379, 28 S. E.

(2d) 329; Seibel v. Leach, 233 Wis. 66, 288 N. W. 774. As said in the Seibel case (233 Wis. 68, 288 N. W. 775):

"* * * Courts may in proper instances apply old rules to newly created conditions, but they cannot create new rules for conditions already regulated."

Our conclusion is that the order should be reversed as to the first cause of action.

Reversed as to the first cause of action.

---
[1]Reported in 40 N. W. (2d) 337.