# HERMAN A. HAHN v. CITY OF ORTONVILLE.[1]

February 20, 1953.

No. 35,833.

---

[1]Reported in 57 N. W. (2d) 254.

*E. V. Cliff,* for appellant.
*Streissguth, Berens & Rodenberg,* for respondent.

MATSON, JUSTICE.

Defendant, the city of Ortonville, appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

We are primarily concerned with the question of whether the civil damage act (M. S. A. 340.95), which imposes a liability in favor of a third party injured by the intoxication of a purchaser of liquor, applies to a municipality operating a municipal liquor store. The

430

action which gives rise to this question and certain other related issues was brought by the plaintiff against the city of Ortonville for injuries sustained in an assault committed upon him by Robert Van Hout, a minor, who had obtained liquor in defendant's store. Subordinate issues also arise as to whether the evidence sustains findings (1) that there was an illegal sale, (2) that the purchaser became intoxicated, (3) that the illegal sale caused or contributed to the intoxication, and (4) that plaintiff was injured by the purchaser.[2]

Taking as we must the view of the evidence most favorable to the verdict it appears that Van Hout and three or four of his friends on the evening of November 20, 1947, spent the hour between eight and nine o'clock in defendant's municipal liquor store. While there, they each consumed five or six drinks of whiskey. Van Hout testified that while standing at the bar he personally bought and paid for whiskey which was served by one of the bartenders. Both bartenders on duty that night denied having sold any liquor to Van Hout, and one of them said that the assistant manager, now deceased, had instructed him not to sell Van Hout any liquor because he was a minor. None of the witnesses could recall or identify the bartender or bartenders who served them. The credibility of the various witnesses was, however, for the jury, and it could therefore accept Van Hout's testimony as true. It follows that the evidence sustains the verdict upon the issue of whether an illegal sale was made to a minor.

■ Was Van Hout intoxicated? At about nine o'clock he and his friends left the Ortonville liquor store and went over to Big Stone City, South Dakota, where they purchased a fifth of whiskey. They then returned to Ortonville where, with the exception of a couple of drinks given to others, they consumed the whiskey in a cafe. A little later they sent over to Big Stone City for another pint of whiskey which was also partly consumed in the same cafe. At about twelve o'clock midnight the group left the cafe and went to a dance

---

[2]It is not to be overlooked that under § 340.95 a person is liable for *giving* as well as for *selling* intoxicating liquor. Sworski v. Coleman, 208 Minn. 43, 293 N. W. 297.

in the Ortonville armory. Shortly after arriving at the dance Van Hout and two of his companions, Dick Toner and Keith Karow, went to the men's lavatory located in the basement of the armory. Here the remainder of the unfinished pint of whiskey was consumed. Karow estimated that upon finishing the pint of whiskey he had had about 15 drinks. While drinking the whiskey one of the members of the group suggested that they return to Big Stone City, but one of his companions objected because in his opinion Big Stone City was no good. This remark led to an argument with Luane Welde and Henry Reddies, two young men from Big Stone City who were also in the lavatory, over the relative merits of the cities of Big Stone and Ortonville. Toner struck Welde, and a fight resulted between these two men. When Reddies made a move toward the fight Van Hout struck him, and a fight started between Van Hout and Reddies. In the meantime plaintiff entered the lavatory and attempted to interfere in the fight by grabbing Van Hout's shoulder. Van Hout then hit plaintiff a blow which felled him to the floor where he apparently struck his head and became unconscious. Karow and Welde both testified that Van Hout, who ordinarily was of a friendly nature, was quarrelsome and not like himself when he struck plaintiff. Karow also testified that he "could tell Van Hout had been drinking at that time, but he was not nearly as bad as later on." He stated further that Van Hout was "under the influence" when at the dance. This evidence and the possible inferences to be drawn from it and the surrounding circumstances sustain a jury finding that Van Hout was intoxicated when he struck plaintiff. The jury could also reasonably infer that the belligerency of the parties and their fistic combat over the relative merits of Ortonville and Big Stone City were not solely the result of a spirit of community pride. Intoxication within the meaning of § 340.95 may be manifested in a variety of ways according to the peculiar circumstances of the individual case.[3] As far as the infliction of physical injuries upon a third party is concerned, a person may be deemed intoxicated within the meaning of § 340.95 when

---

[3]See, 22 Wd. & Phr. (Perm. ed.) 427.

his excessive use of intoxicants has produced such a material change in his normal mental status that his behavior becomes unpredictable and uncontrolled and, as a result, slight irritations, real or imaginary, cause outbursts of anger which find expression in acts of physical violence against another.[4]

■ Was the intoxicating liquor procured in defendant's liquor store between eight and nine o'clock in the evening a proximate cause of Van Hout's intoxication? Between the time of his departure from the municipal liquor store and the time of the fight, Van Hout had consumed a considerable amount of whiskey obtained elsewhere. Clearly the evidence sustains the verdict on this issue. In order to establish liability for an illegal sale under the civil damage act (§ 340.95), the liquor sold need not be the sole cause of intoxication but it is enough if it is a co-operating, concurring, or proximately contributing cause.[5]

The evidence also sustains a finding that plaintiff was seriously injured by Van Hout's blow. He fell to the floor unconscious, and in that condition he was later taken to his home. On the two succeeding mornings he was examined by a physician. On the second morning he was taken to a hospital where he remained in an unconscious or confused state for approximately 11 days following the time of injury. While in the hospital it was necessary to use some restraints on him because of restlessness and he also experienced some bowel and bladder trouble. Plaintiff resumed his regular employment late in February 1948, which was about two months after his release from the hospital. He has suffered no industrial handicap. Examinations and X rays disclose the loss of one tooth from a bridge, bruises on the face, and a skull fracture followed by a brain concussion. X rays taken about four years after the injury was incurred show that the skull fracture is entirely healed, but at the time of the trial plaintiff complained of headaches, dizziness, and weakness. His attending physician testified that these com-

[4]Cf. Sylvester v. Northwestern Hospital, 236 Minn. 384, 53 N. W. (2d) 17; State v. Graham, 176 Minn. 164, 222 N. W. 909.

[5]Fest v. Olson, 138 Minn. 31, 163 N. W. 798; see, Sworski v. Coleman, 208 Minn. 43, 293 N. W. 297.

plaints and injuries were consistent with his previous findings and that in his opinion they were caused by the injuries incurred at the time of the fight. There were no objective symptoms to support plaintiff's statements that at the time of trial he was suffering from headaches and dizziness but the physician was of the opinion that mild post-traumatic headaches and dizziness could follow a concussion such as plaintiff received. Plaintiff sustained a loss in wages of $720 and incurred hospital and medical bills of $491.40. The jury awarded $4,800 for damages. The evidence sustains the verdict not only as to the cause of plaintiff's injuries but also as to the amount of damages awarded.

■ We come to the fundamental question of whether the civil damage act applies to a city or village operating a municipal liquor store. Defendant takes the position that it is immune from liability on the theory that the operation of a municipal liquor store is purely a governmental function as distinguished from a corporate or proprietary undertaking. Since our earliest decisions the immunity of the state from suits for torts has never been fully extended to subordinate units of government but has been made subject to limitations in the form of certain common-law exceptions. Pursuant to such limited immunity, cities and villages are as immune from liability as the state for damages resulting from the *negligence* of their servants in carrying on "governmental" functions, but, for torts committed in their "corporate" or "proprietary" capacity, they are just as liable as private corporations.[6] Strictly speaking the governmental-proprietary test properly relates only to the field of common-law torts. The remedy provided by the civil damage act (§ 340.95), however, is purely a statutory creation which had no existence at common law. In fact, the establishment of liability under the statute is not dependent on a finding of negligence. Furthermore, it is not to be overlooked that the legislature may impose liability for torts upon cities and villages irrespective of any distinction between governmental and proprietary powers.

[6]See, Peterson, *Governmental Responsibility for Torts in Minnesota*, 26 Minn. L. Rev. 293, 296.

434

Some states have already abolished the distinction between governmental and proprietary functions in keeping with the modern tendency which is to restrict rather than extend the doctrine of municipal immunity.[7] The injustice of the immunity doctrine to injured individuals in this era of rapidly expanding governmental functions and services is apparent. In the light of the legislative power to impose liability upon a municipality irrespective of whether the tort arises from the exercise of a governmental or a proprietary power, the question of whether the civil damage act is applicable to cities and villages cannot be determined simply on the basis of whether the operation of a municipal liquor store is governmental or proprietary in its nature. Instead the question becomes one of statutory construction. In view, however, of the traditional fixing of liability and nonliability along the division line between governmental and corporate powers as established by our decisions in the field of negligence, the distinction between governmental and proprietary acts may be of some significance in the ascertainment of legislative intent. A fixing of liability for a statutory wrong, irrespective of the distinction between governmental and proprietary powers, would involve a departure from the traditional pattern of liability and, therefore, should be based on a clear expression of legislative intent. It is recognized that, when a statute is not explicit but requires construction, a stricter interpretation is required to establish a legislative intent to fix a liability in derogation of a sovereign immunity than where the liability is imposed only with respect to a proprietary act. See, 3 Sutherland, Statutory Construction (3 ed.) §§ 6301 to 6303.

■■■ Clearly the statutory authorization for the establishment and operation of a municipal liquor store, as defined by § 340.07, subd. 5, involves an application of the police power for the regulation of the intoxicating liquor traffic for the promotion and protection of public health, safety, morals, and welfare. Primarily, a

[7] 4 Dunnell, Dig. & Supp. § 6808; Annotation, 89 A. L. R. 394; 19 Va. L. Rev. 108; 38 Am. Jur., Municipal Corporations, § 573; 3 Sutherland, Statutory Construction (3 ed.) § 6303.

municipal liquor store is a governmental agency for the discharge of a governmental function. We so held in Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362, a decision which had nothing to do with any issue of liability under the civil damage act but simply determined that statutory provisions (§ 340.12) requiring liquor store operators to be licensed and to file bonds are inapplicable to a municipal liquor store. That decision, like the adjudication of any other concrete case, has no authoritative value beyond its controlling facts. Although, as held in the Stabs case, the operation of a municipal liquor store is so much a governmental activity as to make it unreasonable to assume that the legislature intended that the municipality should license itself and provide a bond as required for private liquor dealers (§ 340.12), it does not follow that such operation is not also an invasion of the proprietary field. To ignore realities and press a juristic concept to such abstract extremes that a given situation must be held wholly black or wholly white is neither sound logic nor good sense.[8] Municipal liquor stores, although established as a part of a liquor-controlling system, are also enterprises which invade the profit-making field. No one will deny that a municipal liquor dispensary is normally a source of financial profit for the municipality. Actual profit, however, is not the test, and it is enough that the city is in a profit-making business. As held by this court in Keever v. City of Mankato, 113 Minn. 55, 129 N. W. 158, 775, 33 L.R.A.(N.S.) 339, an enterprise is proprietary when it is profit making in the sense that when conducted by private persons it is operated for profit. We find nothing inconsistent in recognizing the actual facts by holding that the operation of a municipal liquor store involves an exercise of both governmental and proprietary powers.

■ Since we have an exercise of a proprietary power as well as of a governmental function, the operation of a municipal liquor store, for the purpose of construing the civil damage act, will be treated as a proprietary undertaking. Section 340.95 provides:

[8]See, New York v. United States, 326 U. S. 572, 66 S. Ct. 310, 90 L. ed. 326.

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any *person,* has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; * * *." (Italics supplied.)

The language of the statute, which was enacted in 1911 prior to the establishment of municipal liquor dispensaries in this state, has never been altered. The difficulty arises as to the meaning to be ascribed to the word "person." Does it apply to municipal corporations? In endeavoring to discover and effectuate the legislative intent we should consider the contemporaneous legislative history, legislative and administrative interpretations of the statute, the mischief to be remedied, and the object sought to be accomplished by the statute,[9] and we should also consider other statutes relating to the same subject matter as far as they shed light on the question.[10] It is to be borne in mind that civil damage acts, although penal in nature, are also remedial in character and, according to the prevailing view, are to be liberally construed *so as to suppress the mischief and advance the remedy.*[11]

 In the light of these rules of construction we turn to the liquor control act of 1934 (Ex. Sess. L. 1933-1934, c. 46), the very statute which authorized the establishment of municipal liquor stores. Section 1 of that act is now codified as M. S. A. 340.07, which expressly provides in subd. 1 that the term " 'person' includes the meaning

[9]M. S. A. 645.16(3, 4, 7, 8); Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362.

[10]Stabs v. City of Tower, *supra;* County of Hennepin v. County of Houston, 229 Minn. 418, 39 N. W. (2d) 858; State ex rel. Bergin v. Fitzsimmons, 226 Minn. 557, 33 N. W. (2d) 854; 6 Dunnell, Dig. & Supp. § 8984.

[11]Buckmaster v. McElroy, 20 Neb. 557, 31 N. W. 76, 57 Am. R. 843; Mead v. Stratton, 87 N. Y. 493, 41 Am. R. 386; Howlett v. Doglio, 402 Ill. 311, 83 N. E. (2d) 708, 6 A. L. R. (2d) 790; Annotations, 1 Ann. Cas. 134 and Ann. Cas. 1917B, 533; 30 Am. Jur., Intoxicating Liquors, § 613; cf. 48 C. J. S., Intoxicating Liquors, § 431.

extended thereto by section 645.44, subdivision 6[7]." Next we turn to the liquor control act of 1943 (L. 1943, c. 460). Section 1(e) of that act is now codified as M. S. A. 340.401, subd. 6, which provides:

" 'Person' means any individual, corporation, firm, partnership, or association *and includes the meaning extended thereto by section 645.44, subdivision 6*[7]." (Italics supplied.)

The aforesaid legislative acts of 1934 and 1943 are closely related to the civil damage act (§ 340.95) in that they deal with the same general problem. Although enacted at different times there can be little doubt that the legislature has regarded all three acts as supplementary to one another and as integral parts of a unified plan for controlling the sale and consumption of intoxicating liquor. When legislative acts involve a single subject or problem, there is an unusually strong reason for applying the rule of statutory construction that when statutes are *in pari materia* they are to be construed harmoniously and together.[12] Section 645.44, subd. 7, referred to in the 1934 and 1943 acts, defines the word "person" as follows:

" 'Person' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations."[13]

■ In the light of these statutory definitions as used in these closely related statutes, there can be little doubt that the legislature intended the word "person" to apply to and include municipal corporations engaged in selling liquor. In enacting the 1934 liquor control act, which authorized the establishment of municipal liquor stores, the legislators were already familiar with the civil damage act (§ 340.95) and, if they had intended the word "person" not to apply to municipal corporations, no doubt they would have made specific provision to the contrary. Furthermore, the purpose of the 1934 act was to eliminate the evils incident to the selling and con-

---

[12]County of Hennepin v. County of Houston, 229 Minn. 418, 39 N. W. (2d) 858; 6 Dunnell, Dig. & Supp. § 8984.

[13]We have not overlooked the use of the word *may* in this statutory definition.

sumption of intoxicating liquor. The imposition of a liability for damages resulting to a third party from an illegal sale of liquor under the civil damage act (§ 340.95) is conducive to the attainment of the same purpose. Bearing in mind the mischief to be remedied, it is unreasonable to assign to the legislature an intent to exempt municipal corporations engaged in the proprietary act of selling liquor from the sanctions applicable to private liquor dealers.

Our conclusion that the civil damage act applies to municipal corporations is further confirmed by a January 1943 ruling of the attorney general to the same effect. Since the promulgation of that ruling several sessions of the legislature have intervened, but no effort has been made to enact amendatory legislation to challenge or to modify the attorney general's interpretation.

■ Defendant contends however that, since the act of the servant who served and sold the liquor to Van Hout was prohibited by state statute, by a city ordinance, and by specific instructions given by the store manager to the bartenders immediately prior to the sale, it should not be held liable. Section 340.941 expressly provides that any sale of liquor in a public drinking place by any clerk, barkeep, or other employe authorized to sell liquor in such place is the act of the employer as well as of the person actually making the sale and both the employer and employe are liable to all the penalties provided by law. Aside from this statute it is the rule that a municipality is liable for the torts of its servants acting within the general scope of its corporate powers although their acts are unauthorized in the particular case.[14]

■ Defendant further asserts that plaintiff's failure to give a 30-day written notice pursuant to § 465.09 operates to relieve it from liability. There is no merit in this contention. Notice to a municipality under this section is required only when an action is predi-

---

[14]See, Welter v. City of St. Paul, 40 Minn. 460, 42 N. W. 392; 4 Dunnell, Dig. & Supp. § 6813; Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 293, 299 to 306; cf. State v. Lundgren, 124 Minn. 162, 144 N. W. 752; State v. Sobelman, 199 Minn. 232, 271 N. W. 484; State v. Holm, 201 Minn. 53, 275 N. W. 401.

cated upon negligence.[15] The instant action under the civil damage act is for a statutory wrong and not for a common-law tort of negligence. See, Thompson v. Wogan, 309 Ill. App. 413, 33 N. E. (2d) 151.

The order of the trial court is affirmed.

Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

[15]Bohrer v. Village of Inver Grove, 166 Minn. 336, 207 N. W. 721; see, Maylone v. City of St. Paul, 40 Minn. 406, 42 N. W. 88; Orth v. Village of Belgrade, 87 Minn. 237, 91 N. W. 843.